UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA


MICHELLE LEE GOETZ,                      CIVIL NO. 16-4313 (DWF/DTS)

      Plaintiff,

v.                                       REPORT AND RECOMMENDATION

NANCY A. BERRYHILL,
*Acting Commissioner of Social Security,*

      Defendant.


## INTRODUCTION

Plaintiff Michelle Lee Goetz ("Goetz") appeals the Commissioner of Social Security's denial of her application for disability insurance benefits. This matter is before the Court on cross-motions for summary judgment [Docket Nos. 15, 18]. For the reasons set forth below, the Court recommends Goetz's Motion for Summary Judgment be denied and the Commissioner's Motion for Summary Judgment be granted.

## PROCEDURAL HISTORY

On October 25, 2013, Goetz filed an application for disability insurance benefits stemming from numerous ongoing health issues. Tr. 12, 17.[1] She claims a disability onset date of September 9, 2009, and a date last insured of March 31, 2015. Tr. 89-90. Thus, Goetz must establish she became disabled on or before March 31, 2015. *Martonik v. Heckler*, 773 F.2d 236, 238 (8th Cir. 1985).

---

[1] "Tr." refers to the consecutive pagination of the Social Security Administrative Record in this matter.

Goetz's application was denied initially on January 3, 2014, and again upon reconsideration on June 24, 2014. Tr. 95-96, 109-10. Goetz appealed her denial to the ALJ, who upheld the denial of benefits, concluding that, while Goetz was unable to perform past relevant work, she was able to perform other work. Tr. 25-26. Goetz then appealed to the Appeals Council, which appeal was denied, making the ALJ's November 5, 2015 decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481; Tr. 1-3.

On December 21, 2016, Goetz timely filed this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner. Compl., Docket No. 1. The parties filed cross motions for summary judgment [Docket Nos. 15, 18] pursuant to District of Minnesota Local Rule 7.2(c).

Goetz argues the ALJ committed reversible error in crafting a Residual Functional Capacity Assessment ("RFC") not supported by substantial evidence in the record. Pl. Mem. p. 1, Docket No. 16. In sum, she argues the ALJ placed too much weight on opinions of non-examining sources while placing little or no weight on the opinions of examining and/or treating sources. *Id.* at pp. 7-14. She also alleges the ALJ improperly assessed her credibility. *Id.* at pp. 14-16. The Commissioner argues the ALJ assigned proper weight to the medical opinion evidence and correctly assessed Goetz's credibility, and thus the denial of benefits was supported by substantial evidence in the record. Def. Mem. p. 1, Docket No. 19. In essence, the dispute hinges on whether the ALJ considered and properly weighed the medical evidence and the claimant's testimony in determining Goetz's RFC.

2

## FINDINGS OF FACT

### I.    ALJ DECISION

The ALJ determined Goetz was not disabled as defined by the Social Security Act and denied her application for disability insurance benefits.  Tr. 24-26.  The ALJ proceeded through the five-step evaluation process provided for in social security regulations.  *See* 20 C.F.R. § 404.1520(a)(4); Tr. 14-25.  At step one, the ALJ found Goetz was not presently engaged in substantial gainful activity because, while she had been briefly paid to assist an elderly neighbor with chores and errands, that assistance did not constitute substantial gainful activity.  Tr. 14.  At step two, the ALJ determined Goetz had the severe impairments of relapsing polychondritis (cartilage inflammation and deterioration); history of bilateral knee replacement; chronic obstructive pulmonary disease/asthma, with chronic tobacco abuse; history of aortic aneurysm; history of scleritis (eye inflammation); chronic pain syndrome; peripheral arterial/vascular disease with aortoiliac stenting bilaterally; right renal artery stenosis with renal artery stenting; anemia; and osteoporosis.  Tr. 14-15.  At step three, the ALJ determined these impairments neither met nor medically equaled the severity of one of the impairments listed in 20 C.F.R. §§ 416.920(d), 416.925 or 416.926.  Tr. 15-24.  Accordingly, the ALJ determined Goetz's RFC as:

> … through the date last insured, [Goetz] had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), which involves lifting and carrying 10 lbs. occasionally and less than 10 lbs. frequently, sitting for 6 hours out of an 8-hour day, and standing and/or walking for 2 hours out of an 8-hour day.  The claimant would be able to occasionally climb ramps and stairs, occasionally be able to balance, stoop, kneel, crouch and crawl, and would not be able to climb ladders or scaffolds.  There would be no exposure in the workplace to unprotected heights or moving

3

> mechanical parts or concentrated amounts of dust, odors, fumes and pulmonary irritants, with no work involving exposure to extreme cold or heat, or vibration.

Tr. 16.

At step four, the ALJ determined Goetz was unable to perform past relevant work as a training specialist because the vocational expert testified Goetz's RFC precluded her from doing so. Tr. 24. At Step Five, the ALJ found that jobs exist in significant numbers in the national economy that Goetz could have performed, such as a document preparer, semi-conductor bonder, and a touch up screener for printed circuit board. Tr. 24-25. The ALJ thus concluded that Goetz, given her relative youth (43 years old) and her education, was not disabled under the Social Security Act. *Id.*

## CONCLUSIONS OF LAW

### I. STANDARD OF REVIEW

The Commissioner's denial of disability benefits is subject to judicial review. 42 U.S.C. §§ 405(g), 1383(c)(3). This Court has authority to "enter, upon the pleadings and transcript of the record, a judgment affirming, modifying or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* at § 405(g).

Disability under the Social Security Act means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* at § 423(d)(1)(A). Under the regulations, disability means that the impairment(s) is/are so severe that the claimant is not only unable to engage in her previous work, but also

cannot engage in any other kind of substantial gainful employment that exists in the national economy. *Id.* at § 423(d)(2)(A).

The Commissioner uses a five-step sequential evaluation process to determine whether a claimant is entitled to disability benefits. 20 C.F.R. § 404.1520(a). The Commissioner evaluates "(1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is, or approximates, a listed impairment; (4) whether the claimant can perform past relevant work; and if not, (5) whether the claimant can perform any other kind of work." *Brock v. Astrue*, 674 F.3d 1062, 1064 n.1 (8th Cir. 2012); *see also* 20 C.F.R. § 404.1520(a)(4).

The claimant generally bears the burden of proving entitlement to disability benefits. *See* 20 C.F.R. § 404.1512(a); *Teague v. Astrue*, 638 F.3d 611, 615 (8th Cir. 2011); *Young v. Apfel*, 221 F.3d 1065, 1069 n. 5 (8th Cir. 2000). Once the claimant demonstrates at step four that he or she cannot perform past work due to a disability, however, "the burden of proof shifts to the Commissioner to prove, first that the claimant retains the residual functional capacity to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to do." *Nevland v. Apfel*, 204 F.3d 853, 857 (8th Cir. 2000).

"This Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006). Substantial evidence is "less than a preponderance, but enough that a reasonable mind might accept as adequate to support a decision." *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). On review, this Court considers "both evidence that detracts from and evidence that supports the Commissioner's decision." *Hartfield v.*

*Barnhart*, 384 F.3d 986, 988 (8th Cir. 2004). The Court may not substitute its own judgment or findings of fact for those of the ALJ. *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993). If it is possible, based on the evidence in the record, to reach two inconsistent decisions, and if one of those decisions is the Commissioner's position, the decision must be affirmed. *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). In other words, the denial of benefits will not be disturbed "so long as the ALJ's decision falls within the available zone of choice. An ALJ's decision is not outside the zone of choice simply because [the reviewing court] might have reached a different conclusion had [it] been the initial trier of fact." *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008); *see also Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988) ("The concept of substantial evidence . . . embodies a zone of choice within which the Secretary may grant or deny benefits without being subject to reversal on appeal").

## II.    ANALYSIS

### A.    ALJ's Weighing of Opinion Evidence

Goetz's primary argument is that the ALJ's denial of benefits was not supported by substantial evidence because the ALJ improperly weighed the evidence in crafting Goetz's RFC. Pl. Compl. pp. 8-14, Docket No. 16. The ALJ's RFC determination at step four is defined as the "most [the claimant] can do despite [her] limitations." 20 C.F.R. § 404.1545(a)(1); *see also Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). The RFC is based on all relevant evidence in the record, which may include medical records, opinions from treating physicians or other practitioners, and Goetz's own description of her limitations. 20 C.F.R. § 404.1545(a)(1); *see also Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir.

2013). Goetz's RFC is ultimately an administrative determination reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e)(2); 416.927(e)(2); *see also Perks*, 687 F.3d at 1092. Although the ALJ must show that his determination of Goetz's RFC is supported by "some medical evidence, the burden of persuasion to prove disability and demonstrate RFC remains on the claimant." *Perks*, 687 F.3d at 1092.

### 1. Treating Physicians Drs. Jasek and Stoiber

Goetz argues that the ALJ erred when he did not give controlling weight to the opinions provided by Goetz's two treating physicians, Andrew Jasek, M.D. and Thomas Stoiber, M.D. Pl. Mem. pp. 8-14, Docket No. 16. The ALJ assigned both doctors' opinions "little weight" because they were largely inconsistent with the objective record. Tr. 18-20. Goetz argues the ALJ's explanation for assigning the treating physicians little weight were not good reasons, and that the ALJ did not adequately evaluate the weight-assigning factors under 20 C.F.R. § 404.1527(c)(2). Pl. Mem. pp. 9-11, Docket No. 16.

Generally, a treating physician is entitled to controlling weight when the opinion is "not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2). However, this deference is neither inherent nor automatic, and the ALJ must evaluate the record as a whole. *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014). An ALJ may forego giving a treating physician's opinion controlling weight under certain circumstances, such as when the "treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* (quotation omitted); *see* 20 C.F.R. § 404.1527(c)(2). If a treating physician's opinion is inconsistent with other substantial evidence, such as physical examinations or Goetz's own contemporaneous

7

reports and daily activities, the ALJ may discount or disregard the opinion.  *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017).

Substantial evidence in the record supports the ALJ assigning Dr. Jasek's and Dr. Stoiber's opinions little weight.   Dr. Jasek, Goetz's treating rheumatologist, appeared to opine in his 2014 Physical RFC Assessment that Goetz had fine manipulative limitations, and assessed greater work restrictions than the ALJ's RFC. Tr. 693-96.  As Goetz argues, this contradicts the ALJ's assertion that "the treating source opinions . . . do not include any manipulative limitations."  Tr. 18.  But sloppy writing aside, the ALJ did address the medical record in question, and determined that Dr. Jasek's opinion on manipulative limitations should have limited weight because it was premised on the *possibility* that Goetz would experience future relapsing polychondritis, or "flare-ups."  Tr. 18, 693.  But, the ALJ determined, that possibility did not come to fruition, and the ensuing medical records depicted a woman whose "numerous medical impediments …[were] largely stable" and who's claimed manipulative limitations, particularly involving the use of her hands, were "not supported by the objective medical evidence or the claimant's daily activities."  Tr. 19.  These included her seeking employment after her onset date, her participation in physical activities such as raking and mowing the lawn, her participation in mental activities such as paying bills and playing board games, and the lack of evidence in the record that Goetz had limited use of her hands or sought treatment for hand pain.  Tr. 17-19, 40-70. Goetz had also reported through the relevant period that she was "stable," "mostly OK," doing "fairly well" and, later, "really well."   Tr. 445-46, 650, 652.   Given those

inconsistencies, the ALJ properly assigned Dr. Jasek's opinion on manipulative limitations limited weight.

The ALJ discounted Dr. Stoiber's opinion for similar reasons.  Dr. Stoiber, Goetz's treating cardiologist, based his opinion on Goetz's work-related limitations using a prognosis that Plaintiff's rheumatologic condition was worsening.  Tr. 18-19, 645.  The ALJ discounted Dr. Stoiber's opinion because it was inconsistent with the record and beyond Dr. Stoiber's area of expertise.  Tr. 18-19.  Dr. Stoiber is a cardiologist, not a rheumatologist, and the ALJ has the authority when weighing opinions to give little weight to specialists who opine on issues outside their specialties.  *See* 20 C.F.R. § 404.1527(c)(5).

Similarly, the ALJ gave Dr. Jasek's and Dr. Stoiber's opinions regarding Goetz's attention and concentration little weight because he decided their opinions were inconsistent with and unsupported by the record as a whole.  Tr. 19.  Substantial evidence in the record supports the ALJ's decision.  Dr. Jasek opined that Goetz's experience of pain would "constantly" interfere with her attention and concentration.  Tr. 694.  Likewise, Dr. Stoiber surmised that Goetz's cardiac symptoms would "frequently" interfere with her concentration and attention.  Tr. 644.  But these opinions came from checkbox forms, and neither doctor elaborated on the basis for their conclusions.  Merely checking off a box on a form is not always sufficient to support an opinion as objective medical evidence. *See Teague*, 638 F.3d at 615 (upholding an ALJ's decision to give a treating physician's opinion little weight when the physician did not cite test results, observations, or other objective findings when using a "check-off form").  This is particularly true where, as here, the objective medical evidence

contradicts the checkbox form.  In October 2014, Goetz underwent a "mini-mental status examination" that concluded she had no memory issues.  Tr. 15, 685.  Other medical observations on record, Goetz's self-reported history, and Goetz's daily activities depicted Goetz as relatively capable, despite her medical issues.  *See, e.g.*, Tr. 21, 213, 583, 672.  Thus, substantial evidence supports the ALJ's finding that Dr. Jasek's and Dr. Stoiber's opinions were inconsistent and unsupported in the context of the entire medical record.

Dr. Jasek's and Dr. Stoiber's opinions regarding Goetz's inability to sustain lifting, carrying, standing, walking, and sitting levels are also inconsistent with the medical record as a whole.  Tr. 19.  In several evaluations, Goetz exhibited a normal range of posture and range of motion in her large joints and spine.  *See, e.g.*, Tr. 20, 22, 432, 672-73.  She exhibited no evidence of synovitis, or swollen joints.  *See, e.g.*, Tr. 20, 432, 461, 464.  Additionally, at the end of 2014 and the beginning of 2015, she had a normal gait and motor strength despite reports of intermittent joint pain.  Tr. 22, 651, 654, 672-73.  While other medical evidence depicted Goetz's condition in a harsher light, the ALJ's characterization of Goetz's health was both plausible and supported by evidence in the record.  Accordingly, the ALJ was permitted to give both doctors' opinions limited weight.

Substantial evidence in the record supported the ALJ's decision to award limited weight to Dr. Jasek's and Dr. Stoiber's opinions regarding Goetz's anticipated work absences.  Dr. Jasek opined that Goetz would likely average more than two absences per month due to her impairments; Dr. Stoiber predicted she would miss work on average three times per month.  Tr. 646, 696.  The ALJ gave little weight to these

predictions because he found the objective medical evidence and Goetz's daily activities did not support them. Tr. 19. The ALJ may consider Goetz's daily activities when assessing a medical expert's opinion. *See Fentress*, 854 F.3d at 1021. Goetz's physical activities included using a riding lawnmower, driving, shopping, and occasional outings with others. Tr. 19, 23, 211-12, 738. Despite this evidence, Dr. Jasek and Dr. Stoiber opined that Goetz would likely need to miss work at least twice a month due to her limitations.[2] Tr. 79, 646, 696. These opinions conflict with the state agency medical consultants, who gave Goetz an RFC consistent with the RFC assigned by the ALJ.[3] The ALJ found the state agency medical consultant's opinions more closely aligned with the objective medical evidence and the record as a whole, and thus discounted Dr. Jasek's and Dr. Stoiber's opinions on Goetz's anticipated future work absences. Tr. 23.

Finally, the ALJ properly assigned little weight to Dr. Jasek's opinion on the ultimate issue of disability. Dr. Jasek opined that Goetz is disabled and unable to return to any work. Tr. 20, 728. The ultimate issue of disability, however, is reserved for the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 404.1513(e)(b); *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005). Accordingly, the ALJ was under no obligation to follow Dr. Jasek's conclusion, and did not err when he gave it little weight for the reasons summarized above. The ALJ did not err in declining to give controlling weight to the opinions of the treating sources.

---

[2]    The impartial medical expert, Dr. Steven Golub, projected similar work absences. As is discussed infra, the ALJ also discounted Dr. Golub's projection for inconsistency with the medical record in its entirety.

[3]    The state agency medical consultants are also discussed infra.

## 2.    Consultative Medical Expert Dr. Golub

At the October 2015 hearing, the ALJ heard testimony from Dr. Steven Golub, M.D., an impartial medical expert retained by the ALJ to assess Goetz's medical records.   Tr. 70-80.   Dr. Golub testified that Goetz did not meet the social security disability listings but suffered from "significant limitation of function."  Tr. 72.  Dr. Golub concluded that Goetz was able to lift and carry 10 pounds frequently and 20 pounds occasionally.  Tr. 73.  Dr. Golub predicted Goetz could sit for two hours or stand or walk for 30 to 60 minutes at one time, with no more than four hours sitting and two hours standing and walking in an eight-hour workday.  *Id.*  Dr. Golub went on to predict Goetz could use her hands to reach, handle and finger occasionally, and use her feet frequently.   *Id.*   He opined that Goetz could not work near unprotected heights or moving mechanical parts or in areas with dust, odors, fumes or extreme temperatures. Dr. Golub concluded that Goetz could balance, stoop, kneel, crouch, and crawl a total of 30 to 45 minutes each workday.  *Id.*

The ALJ gave little weight to Dr. Golub's "testimony regarding assessment of [Goetz's] work related limitations," but gave significant weight to "his analysis of the listing criteria due to its greater consistency with the record as a whole."  Tr. 18.  The ALJ discounted Dr. Golub's testimony because it was based on speculative future symptoms, rather than actual functioning, and was inconsistent with the objective medical evidence as a whole.   *Id.*

Goetz argues that the ALJ provided an inconsistent evaluation of Dr. Golub's testimony.  Pl. Mem. pp. 11-13, Docket No. 16.  Goetz asserts that the ALJ could not have properly found one part of Dr. Golub's opinion credible enough to receive

substantial weight, while at the same time discrediting his other opinions.  *Id.*  However, the ALJ is not mandated to accept a medical opinion full-stop.  Indeed, the ALJ is within the purview of 20 C.F.R § 404.1527(c) to weigh the opinion and discount the parts of the opinion that are not supported or consistent with the objective medical evidence in the record.  *See Pirtle v. Astrue*, 479 F.3d 931, 934 (8th Cir. 2007)(upholding an RFC which was consistent with the treating doctor's opinion with the exception of one of his estimates).  In addition, Goetz points to no authority to the contrary.  Therefore, the ALJ did not err *ipso facto* by his decision to give parts of Dr. Golub's opinion substantial weight while giving little weight to other aspects.

The ALJ properly gave Dr. Golub's opinion on Goetz's work-related and manipulative limitations little weight because Dr. Golub's opinion was inconsistent with the objective medical evidence, other medical opinions, and other testimony in the record as a whole. In his opinion, the ALJ stated that he gave Dr. Golub's opinion limited weight because Dr. Golub did not formulate his opinion based upon evidence of actual functioning.  Tr. 18.  As he previously found with Dr. Jasek and Dr. Stoiber, the ALJ found Dr. Golub's opinions lacked supportability and consistency.  Tr. 18-19.  The ALJ noted Goetz's daily activities and the objective medical evidence contradicted the doctors' work-related limitations opinions. Tr. 19.  As previously discussed, Goetz's generally unremarkable examinations described her as possessing a good range of motion in her spine and large joints, generally stable condition throughout the medical period, and normal posture, gait, strength, and sensation.  Tr. 22, 651, 654, 672-73.  The Court need not agree with the ALJ's decision, but rather must determine if it is supported by substantial evidence.  Clearly, Dr. Golub's lack of first-hand knowledge of

Goetz's capabilities, combined with the considerable evidence demonstrating Goetz's capable functioning, constitutes substantial evidence supporting the ALJ's decision. Accordingly, the Court is satisfied that the ALJ properly weighed Dr. Golub's medical opinion related to Goetz's work-related limitations as prescribed by 20 C.F.R. § 404.1527(c).

Finally, the ALJ's decision to place little weight in Dr. Golub's opinion regarding Goetz's fine manipulations is supported by substantial evidence in the record. Dr. Golub prescribed "significant manipulative limitations" to Goetz. Tr. 18, 75-77. Dr. Golub's opinion on Goetz's limitations was similar to Dr. Jasek's and Dr. Stoiber's opinions, to which the ALJ also assigned limited weight. *See Fentress*, 854 F.3d at 1020. The ALJ gave little weight to all three opinions because the record, and Goetz's generally stable condition with minimal complaints, did not support the manipulative limitations assigned. Tr. 18. The medical records do show that Goetz had some minor hand pain, Tr. 98, 727; however, the pain questionnaire submitted by Goetz shows an absence of any hand problems. Tr. 247. In addition, the state agency medical doctor at the reconsideration level assigned no medical limitations after expressly acknowledging that Goetz has some hand pain. Tr. 104. Thus, substantial evidence in the record supported the ALJ's finding that Goetz had less manipulative limitations than Dr. Golub's opinion suggested, and the ALJ properly gave it little weight due to its inconsistency with the objective medical evidence and the record as a whole.

### 3.    State Agency Medical Consultant

At the reconsideration level, the state agency medical consultant determined that Goetz was not disabled, and that her "condition [was] not severe enough to keep

14

[Goetz] from working." Tr. 109-110. The consultant opined that Goetz could sit for six hours out of an eight-hour workday while standing or walking the other two hours. Tr. 106. The consultant also found that Goetz could frequently lift ten pounds, had an "unlimited" ability to push and pull, and had no manipulative limitations. Tr. 106-107. The ALJ gave the consultant's opinion substantial weight because of his familiarity with social security disability regulations and the consistency of his opinion with the medical evidence and record as a whole. Tr. 23.

Goetz does not explicitly dispute that the state agency medical consultant should be afforded substantial weight. Rather, Goetz argues the ALJ improperly ignored the opinion of an earlier state agency consultant who wrote that Goetz presented with "aggressive relapsing polychondritis" and completed a pain questionnaire that indicated severely limited functionality. Tr. 104. While the ALJ never directly addressed the earlier consultant's opinion, the ALJ consistently found in his decision that opinions indicating Goetz had manipulative limitations were inconsistent with the objective medical record and were primarily based on Goetz's subjective self-reporting. Tr. 17, 23-24. Further, Goetz cites no authority for the contention that *every* medical opinion expressed must be directly addressed by the ALJ. The ALJ properly weighed the state agency medical consultants' opinions.

This Court is satisfied that the ALJ adhered to the 20 C.F.R. § 404.1527(C) guidelines for weighing medical opinions. The ALJ set forth "good reasons" throughout his decision that detailed why he weighed the various opinions as he did. Further, the ALJ's summary of Goetz's voluminous medical records is both fair and reasonable. The ALJ weighed the various medical opinions consistently. Given that the ALJ adequately

summarized Goetz's medical history and gave reasons for discrediting certain medical opinions when determining Goetz's RFC, the ALJ properly weighed the medical opinions as prescribed by 20 C.F.R. § 404.1527(c), and substantial evidence supports his conclusion.

### B.    ALJ's Credibility Assessment of Goetz

An ALJ must consider all symptoms and the extent to which those symptoms and pain are consistent with the objective medical evidence and the record as a whole. *See* 20 C.F.R. § 404.1529(a). In evaluating the intensity and persistence of a claimant's symptoms and pain, an ALJ considers the record's objective medical evidence and a claimant's subjective complaints. *Id.* at § 404.1529(c)(2)–(3). In *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), the Eighth Circuit detailed the factors an ALJ may consider in making a credibility determination of a claimant's subjective complaints. These factors are also codified in § 404.1529(c)(3). The ALJ should consider the following: (1) the individual's daily activities; (2) the duration, frequency, and intensity of pain; (3) dosage, effectiveness, and side effects of medications; (4) precipitating and aggravating factors; and (5) functional restrictions. *Polaski*, 739 F.2d at 1322. The ALJ may also consider other relevant factors, such as a claimant's work history and the absence of objective medical evidence to support her pain. *Cox v. Apfel*, 160 F.3d 1203, 1207 (8th Cir. 1998). Moreover, "[s]ubjective complaints may be discounted if there are inconsistencies in the evidence as a whole." *Polaski*, 739 F.2d at 1322 (quotation in original); *see Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (holding that an ALJ may properly discount a claimant's testimony where it is inconsistent with the record). An ALJ is not required to provide detailed analysis of

16

every piece of evidence or every credibility factor; a lack of detailed discussion does not mean he ignored evidence or a factor.  *See Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998); *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010).

In determining Goetz's RFC, the ALJ found  Goetz's statements concerning the intensity, persistence, and limiting effects of her symptoms were not entirely credible. Tr. 17.  Though Goetz contends the ALJ failed to apply all the *Polaski* factors and did not provide reasons for discrediting her self-reporting,  Pl. Mem. pp. 14-16, Docket No. 16, the ALJ's written decision properly assessed Goetz's statements within the *Polaski* framework and 20 C.F.R. § 404.1529(c), and provided adequate reasons for concluding Goetz's testimony deserved little weight.  Tr. 15, 17-18.

Goetz argues the ALJ erred by not discussing Goetz's work history.  While the ALJ did not address Goetz's work history, he was not compelled to do so.  *See Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005) (finding that acknowledging the factors set forth in § 404.1529 and *Polaski* is sufficient).  Moreover, the ALJ need not explicitly reference a particular factor when, by his thorough decision, the Court is satisfied he considered all relevant evidence in the entire case record.  *See Black*, 143 F.3d at 386; *Wildman*, 596 F.3d 966.

Goetz's contention that the ALJ failed to articulate reasons for discrediting her testimony is without merit. The ALJ stated that "[Goetz's] testimony and particularly her prior self-reporting have reflected a high level of independence in a wide range of activities of daily living inconsistent with her overarching allegations of disability due to her impairments."  Tr. 17.  The ALJ then summarized Goetz's hearing testimony and the

17

information from her self-reporting.  Tr. 17-18.  Thus, the ALJ amply demonstrated why he doubted  Goetz's testimony.

Moreover, the ALJ addressed many *Polaski* factors, and substantial evidence supported his conclusions. The ALJ considered Goetz's daily activities, which indicated a degree of independence that conflicted with Goetz's claimed limitations.  Tr. 16-17. The ALJ recognized that Goetz's relapsing polychondritis appeared stable and well controlled by medication.  Tr. 21, 23, 640-55.  The ALJ acknowledged the effectiveness as well as side-effects of Goetz's medication.  Tr. 21-22, 654, 662.  It is clear from his decision the ALJ applied many of the *Polaski* factors when addressing Goetz's credibility, and his conclusion is supported by substantial evidence.

## RECOMMENDATION

For the reasons set forth above, IT IS RECOMMENDED THAT:

1.    Michelle Lee Goetz's Motion for Summary Judgment [Docket No. 15] be DENIED; and

2.    The Commissioner's Motion for Summary Judgment [Docket No. 18] be GRANTED.

Dated:       January 30, 2018

s/ David T. Schultz
DAVID T. SCHULTZ
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

18

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).